IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MOVIMIENTO SOLIDARIO SINDICAL

    Plaintiff

        v.                                CIVIL NO.: 08-1510 (DRD/MEL)

PEPSIAMERICAS, INC.

    Defendant

**REPORT AND RECOMMENDATION**

**I.    PROCEDURAL BACKGROUND**

On February 25, 2008, plaintiff, Movimiento Solidario Sindical ("MSS"), filed a complaint in the Court of First Instance, Superior Part San Juan, challenging an arbitration award issued by the Bureau of Conciliation and Arbitration of the Department of Labor and Human Resources ("Bureau") in favor of defendant, Pepsiamericas, Inc. ("Pepsiamericas"). (Docket 13-2.) On May 2, 2008, Pepsiamericas filed a notice of removal. (Docket 1.) On May 5, 2008, Pepsiamericas filed a motion with the Puerto Rico Court of First Instance requesting a stay of proceedings pending the federal district court's decision regarding removal. (Docket 15-2.) On the same day, MSS filed a motion to remand the present case. (Docket 7 at 9.) On January 28, 2008, the undersigned issued a report and recommendation concluding that the motion to remand should be denied. (Docket 38 at 7.)

On September 9, 2008, Pepsiamericas filed a motion for summary judgment arguing that MSS had not established a valid ground to challenge the arbitrator's factual or legal conclusions, thus precluding vacatur of the arbitration award. (Docket 19 at 1-3.) On October 18, 2008, MSS filed an opposition to the motion for summary judgment arguing that: (1) the arbitrator acted with manifest disregard of the law and that there was misconduct on the part of the arbitrator. (Docket 24.) On November 17, 2008, Pepsiamericas filed a reply to MSS's opposition to the motion for summary

judgment. (Docket 30.) On December 5, 2008, MSS filed its surreply. (Docket 36.)

**II.   FACTUAL BACKGROUND**

The undersigned takes the following factual background from the arbitration record and award. See JCI Commc'ns, Inc. v. IBEW, Local 103, 324 F.3d 42, 45 (1st Cir. 2003); Asociación de Empleados del Estado Libre Asociado de P. R. v. Unión Internaicional de Trabajadores de la Industria de Automóviles, Aeroespacio e Implementos Agrícolas, 2008 WL 2551300 (D.P.R. 2008) (recognizing that only the award and record before arbitrator may be considered for review of an arbitration award.).

José Rodríguez ("Rodríguez") was a salesman at Pepsiamericas and in the course of his duties he served clients, took orders, and placed products. (Docket 13-4 at 4.) Rodríguez's shift began at 7:00 A.M-7:30 A.M. and ran until 3:00 P.M-3:30 P.M.. Id. On November 8, 2006, Rodríguez called Julio Rodríguez, his supervisor, to ask permission to leave work for the morning in order to pick up his sick daughter from school. Id. On the same day, Rodríguez was present at the National Labor Relations Board in his capacity as president of MSS to deal with a matter unrelated to Pepsiamericas from 9:15 A.M. to 12:15 P.M. Id. at 3-4.

Pepsiamericas terminated Rodríguez on December 1, 2006 for violation of a Pepsiamericas rule that mandated dismissal on the first offense for "[f]alsification or alteration of reports, payrolls, invoices, receipts, records or other materials of the company, as well as false or untrue verbal or written statements." (Docket 19-8.) On the same day, Rodríguez began the grievance and arbitration procedure. (See Docket 35-4.) The arbitration proceedings were held on May 10, 2007 and November 28, 2007. (See Docket 19-7; Docket 19-9.) On January 25, 2008, the arbitrator issued an award concluding that: (1) Rodríguez's dismissal was justified pursuant to the collective bargaining agreement ("CBA"),

Pepsiamericas's rules of conduct, and Puerto Rico law; and (2) there was no disparate application of Pepsiamericas's rules of conduct. (Docket 13-4 at 4-9.)

### III. LEGAL ANALYSIS

#### A. Review of an Arbitration Award

The review of an arbitrator's decision in federal court is "'extremely narrow and exceedingly deferential.'" Ramos-Santiago v. United Parcel Serv., 524 F.3d 120, 123 (1st Cir. 2008) (quoting Airline Pilots Ass'n, Int'l v. Pan Am. Airways Corp., 405 F.3d 25, 30 (1st Cir. 2005)). Parties including an arbitration clause in a CBA elect to be bound by the arbitrator's decision regarding construction of that agreement. Id. Thus, federal courts "cannot review the merits of the underlying dispute and are obligated to enforce the arbitral award unless the decision fails to 'draw its essence from the [CBA].'" Id. at 124 (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)). Even if "convinced that the arbitrator committed a serious error," a federal court may not overturn the arbitral award if the arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority." Id. (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)).

Although review is exceedingly deferential to the arbitrator, the court is "not required to give an arbitrator 'carte blanche approval' for every decision." Asociación de Empleados del Estado Libre Asociado de P.R. v. Unión Internacional de Trabajadores de la Industria de Automóviles, Aeroespacio e Implementos Agrícolas, U.A.W. Local 1850, No. 07-2636, 2009 WL 565690 at *2 (1st Cir. March 6, 2009). A federal court may "'vacate an arbitral award only in rare circumstances, such as when there was misconduct by the arbitrator, when the arbitrator exceeded the scope of her authority, or when the

3

Movimiento Solidario Sindical v. Pepsiamericas, Inc.
Civil No. 08-1510 (FAB/MEL)
Report and Recommendation

award was made in manifest disregard of the law.'" Airline Pilots Ass'n, Int'l, 405 F.3d at 30 (quoting JCI Commc'ns v. Int'l Bhd. Of Elec. Workers, 324 F.3d 42, 48 (1st Cir. 2003)). Since we find no evidence on the record of misconduct by the arbitrator or of him going beyond the bounds of his authority, we will limit our discussion to whether the arbitrator acted with manifest disregard of the law.

**B. Manifest Disregard of the Law**

If the "arbitrator acted 'in manifest disregard of the law,'" the First Circuit has held that a federal court may vacate an arbitral award. Id. (quoting Wonderland Greyhound Park, Inc. v Autotote Sys., Inc., 274 F.3d 34, 35 (1st Cir. 2001)). The party seeking to vacate the arbitration award must establish that the award is: "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." Id. (citing McCarthy v. Citigroup Global Mkts., Inc., 463 F.3d 87 91 (1st Cir. 2006)).[1] To successfully vacate an arbitration award for manifest disregard of the law, "there must be 'some showing in the record, other than the result obtained, that the arbitrator knew the law and expressly disregarded it." Id. (quoting Advest, Inc. v McCarthy, 914 F.2d 6, 9 (1st Cir. 1990)).[2]

---

[1] To determine whether an arbitrator has acted in manifest disregard of the law, courts generally apply a two part test, asking "'(1) Did the arbitrator know of the governing legal principal yet refused to apply it or ignored it all together? and (2) Was the law ignored by the arbitrators well defined, explicit and clearly applicable to the case?'" McCarthy v. Citigroup Global Markets, Inc., 463 F.3d 87, 92 n. 7 (1st Cir. 2006) (quoting MARTIN DOMKE, DOMKE ON COMMERCIAL ARBITRATION § 38:9 (3rd ed. 2008)).

[2] The First Circuit has recognized that Hall Street Assocs., L.L.C. v. Mattel, Inc., __ U.S. __, 128 S.Ct. 1396, 1401-04 (2008), held that "manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the Federal Arbitration Act." Ramos-Santiago, 524 F.3d at 124 n.3. The First Circuit has so far, however, declined to extend that ruling to cases where neither party invokes the Federal Arbitration Act and the "original complaint was filed in Puerto Rico state court." Id. These being the circumstances in the present case, the undersigned continues application of the "manifest disregard of the law" standard.

Movimiento Solidario Sindical v. Pepsiamericas, Inc.
Civil No. 08-1510 (FAB/MEL)
Report and Recommendation

      In claiming that the arbitrator acted in manifest disregard of the law, MSS first argues that the arbitrator erred in relying "on a crucial assumption that is concededly a non-fact." See <u>Airline Pilots Ass'n, Int'l</u>, 405 F.3d at 30. A non-fact exists "'where the central fact underlying an arbitrator's decision is concededly erroneous,' that is where 'there was a gross mistake...made out by the evidence, but for which, according to the arbitrator's rationale, a different result would have been reached.'" <u>North Adams Reg'l Hosp. v. Massachusetts Nurses Ass'n</u>, 74 F.3d 346, 348 (1st Cir. 1996) (internal citations omitted) (quoting <u>Electronics Corp. Of Am. v. Int'l Union of Electrical Workers, Local 272</u>, 492 F.2d 1255, 1256 (1st Cir. 1974). In the present case, MSS identifies the arbitrator's finding that Rodríguez did not pick his daughter up on November 8, 2006 as the relevant assumption. (Docket 24-2 at 11.) MSS does not dispute, however, that Rodríguez did spend three hours at the National Labor Relations Board on November 6, 2008, during the leave of absence he had requested in order to pick up his daughter. (<u>See</u> Docket 13-3 at 1.) Thus, even if the arbitrator had found that Rodríguez picked up his daughter and then went to the National Labor Relations Board, it would still be a matter of dishonesty as to the reason for the request to leave work for the <u>entire</u> morning. Given the arbitrator's rationale that dishonesty, in itself, is sufficient to justify dismissal of an employee for a first offense, the arbitrator would have reached the same result regardless of whether Rodríguez actually picked up his daughter prior to attending the National Labor Relations Board proceeding. <u>See</u> <u>North Adams Reg'l Hosp.</u>, 74 F.3d at 348 (1st Cir. 1996); (Docket 13-4 at 4-9.) Therefore, the arbitrator did not act in manifest disregard of the law in this respect.

      MSS also argues that the arbitrator knew the correct legal standard under Puerto Rico law and applied an incorrect standard. (Docket 24-2 at 22-24.) Dishonesty is not to be taken lightly and is, in

5

Movimiento Solidario Sindical v. Pepsiamericas, Inc.
Civil No. 08-1510 (FAB/MEL)
Report and Recommendation

some circumstances, sufficient on its own to justify dismissal of an employee under Puerto Rico law. See Autoridad de Edificios Públicos, 130 D.P.R. 983. According to Puerto Rico's Law 80, a dismissal without just cause is "[one] made by mere whim or fancy of the employer or without cause relative to the normal operation of the establishment." P.R. LAWS ANN. tit. 29, § 185b. Law 80 allows the termination of an employee for a number of reasons which said statute defines as "just cause":

> Just cause for the termination of an employee shall be understood to be:
>
> (a) That the worker indulges in a pattern of improper or disorderly conduct.
>
> (b) The attitude of the employee of not performing his work in an efficient manner; or of doing it belatedly and negligently or in violation of the standards of quality of the product produced or handled by the establishment.
>
> (c) The employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been opportunely furnished to the employee.
>
> (d) Full, temporary or partial closing of the operations of the establishment.
>
> (e) Technological or reorganization changes as well as changes of style, design or the nature of the product made or handled by the establishment, and changes in the services rendered to the public.
>
> (f) Reductions in employment made necessary by a reduction in the anticipated or prevailing volume of production, sales or profits at the time of the discharge."

P.R. LAWS ANN. tit. 29, § 185b. An employee bears the initial burden of alleging unjustified dismissal and proving actual dismissal. Hoyos v. Telecorp Communications, 405 F. Supp. 2d 199, 205-06 (D.P.R. 2005). If the employee meets this burden, "the employer must establish by a preponderance of the evidence that the discharge was made for good cause." Id. at 206.

The Puerto Rico Supreme Court has stated that Law 80 is not a "code of conduct containing a

6

Movimiento Solidario Sindical v. Pepsiamericas, Inc.
Civil No. 08-1510 (FAB/MEL)
Report and Recommendation

list of clearly defined offenses with their corresponding penalties for each case" because of "the variety of circumstances and regulations of the multiple working establishments ." Secretario del Trabajo v. I.T.T. Western Hemisphere Directories, Inc., 8 P.R. Offic. Trans. 564 (P.R. 1979). As seen in the statutory language quoted above, Law 80 seems to primarily contemplate just cause for dismissal of an employee in the form of that employee's pattern or repeated commission of offenses. P.R. LAWS ANN. tit. 29, § 185b; Secretario del Trabajo, 8 P.R. Offic. Trans. 564. Law 80 does not typically condone dismissal for a single offense, unless "the intensity of the offense requires it in order to protect the good operation of the enterprise and the safety of its employees." Secretario del Trabajo, 8 P.R. Offic. Trans. 564. In order for a single offense to be justified, it must be "so serious or potentially damaging as to endanger the order, the safety, or the efficiency which constitute the proper and normal operation of the establishment." Id.

Specifically regarding dishonesty, the Puerto Rico Supreme Court has held that where an employee lied in order to obtain an eight-day leave of absence, an employer's rule mandating dismissal on the basis of that isolated offense was not justified. Secretario del Trabajo, 8 P.R. Offic. Trans. 564. In particular, the court stated that in order to determine whether the single offense justified dismissal, it had to "consider whether the isolated offense committed by the [employee] affected or endangered the 'proper and normal operation of the establishment' to the point of warranting his dismissal in order to protect both the employer and the workers in the normal life of the enterprise." Id. The court compared the employer's rule mandating dismissal for the employee's single offense to the employer's rules mandating equal or lesser reprimands for more serious offenses. In the end, the Supreme Court of Puerto Rico held that the employer did not show that the dismissal for the single offense of lying to

7

Movimiento Solidario Sindical v. Pepsiamericas, Inc.
Civil No. 08-1510 (FAB/MEL)
Report and Recommendation

obtain a leave of absence was incompatible with the "normal operation of the establishment" and rejected the notion that "the subterfuge used by the employee to obtain the leave of absence reveals a corrupt character which vulnerates the trust deposited by the employer on the employee, and that what happened in the privacy of an office undermines the confidence that the clients have deposited on the company." Id. (footnotes omitted).

The Puerto Rico Supreme Court has also held, however, that some acts of dishonesty can be justifiable grounds for dismissal. See, e.g., Autoridad de Edificios Públicos v. Unión Independiente de Empleados de la Autoridad de Edificios Públicos, 130 D.P.R. 983 (P.R. 1992) (certified English translation supplied by defendant (Docket 41-5; Docket 41-6)). In Autoridad de Edificios Públicos v. Unión Independiente de Empleados de la Autoridad de Edificios Públicos, 130 D.P.R. 983 (P.R. 1992), the Puerto Rico Supreme Court held that dismissal was justified where an employee falsified an employment application by lying about criminal convictions. Id. The court reasoned that the employee's conduct was sufficient to justify dismissal because the employee intentionally defrauded his employer with regard to criminal convictions, thus interfering with the employer's ability to make significant decisions based on the information contained in employment applications. Id. The court distinguished the dishonesty in that case from the dishonesty in Secretario del Trabajo, 8 P.R. Offic. Trans. 564, stating, "[i]t springs to the eye that the prejudice caused by [the conduct in Secretario del Trabajo] is significantly less than the seriousness, on the outset, of lying on an employment application." Autoridad de Edificios Públicos, 130 D.P.R. 983. The court concluded that even if the falsification of the employee's employment application was a first offense, "[t]he serious moral consequences, the visible injustice and the employer's restriction to the right of selection, discussed previously—that affect in a

8

certain manner the safety and efficiency in employment—do not allow for another decisive course other than to resolve that the situation at hand deserves...dismissal." Id.

In Miranda Ayala, et al. v. Hosp. San Pablo, 2007 TSPR 62 (P.R. 2007) (certified English translation supplied by defendant (Docket 41-3; Docket 41-4), the Puerto Rico Supreme Court also held that dismissal was justified where an employee stole approximately four cases of beer from his employer. The court also distinguished the behavior in this case from that in Secretario del Trabajo because of the seriousness of the offense and the clarity of the employer's regulation. Id. The court concluded that dismissal was justified because of the seriousness of the dishonest act, the fact that the employer warned the employee that dismissal was possible with regard to previous offenses, and the "attitude and detail of [the employee's] character harmful to the orderly operation" of the business revealed by the employee's acts. Id.

In the present case, the arbitrator relied solely on the alleged dishonest act as the basis of his opinion that Rodríguez's dismissal was justified under Puerto Rico law. (See Docket 13-4 at 4-9.) The arbitrator did not take into account any of the other circumstances in the case, such as Rodríguez's prior disciplinary record or Rodríguez's performance on the job. See id. In relying solely on Rodríguez's act of deceit to obtain a half-a-day leave of absence, the arbitrator's conclusion that his dismissal was justified under Puerto Rico law is clearly in disregard of the Secretario del Trabajo case cited by the arbitrator himself. (See Docket 13-4 at 6). The factual circumstances in the present case are similar to those in Secretario del Trabajo, where the Puerto Rico Supreme Court held dismissal on the first offense to be unjustified. See Secretario del Trabajo, 8 P.R. Offic. Trans. 564. Notably, the dishonest conduct in the present case, lying to obtain a leave of absence for a few hours, seems of a similar nature, if not

9

less serious, than the conduct in Secretario del Trabajo, where an employee lied to obtain an eight-day leave of absence. See id. We note as well that, both Pepsiamericas and the employer in Secretario del Trabajo had similar rules mandating dismissal for false statements. See id.

Furthermore, much like the employer's rules in Secretario del Trabajo, Pepsiamericas's rules of conduct contain several rules that mandate equal or lesser reprimands for more serious offenses than making a false statement to obtain a leave of absence. See id. Pepsiamericas's rules of conduct provide three categories of rules with differing levels of disciplinary action. (See Docket 19-10.) The first category, labeled "A", provides for four levels of disciplinary action starting with a verbal warning for the first offense and ending with dismissal for the fourth offense. (Docket 19-10 at 1-2.) The second category, labeled "B", provides for three levels of disciplinary action starting with a written warning for the first offense and ending with dismissal for the third offense. (Docket 19-10 at 3-5.) The third category, labeled "C", provides for dismissal for the first offense. (Docket 19-10 at 6-9.)[3]

There are several offenses listed in the "A" and "B" categories that appear to be of equal or greater severity than the conduct for which Rodríguez was dismissed. (See Docket 19-10.) Specifically, category "A" includes "[o]perating machinery or company equipment without authorization or

---

[3] Article 6, Section A of the CBA states:

The Company and the Union understand that the Progressive discipline procedure is beneficial to both parties and they therefore agree that it will be applied in all cases in which an employee's conduct needs to be corrected. Both parties understand that the principal objective of the Progressive Discipline is to educate and correct and not to punish. In such manner that the punishment will arise only as a result of the failure of the application of the Progressive Discipline.

(Document 19-4 at 11-12.) Article 29, Section 1 of the CBA states, however, that "[PepsiAmericas] will establish internal work rules provided they are reasonable, which must be obeyed by the employees while they are on official [Pepsiamericas] business." (Docket 19-5 at 17.)

justification to do so" and "enter[ing] the offices or premises of the [Pepsiamericas] during non working [sic] hours without prior authorization, except in situations of emergency." Id. at 1-2. Category "B" includes "dispos[ing] of [Pepsiamericas] property without authorization," "allow[ing] other people to use of the employee's [sic] [Pepsiamericas] identification card for identification purposes," "us[ing] time from work and/or company property or equipment to perform personal work," and "show[ing] up at work under the influence of alcohol, to introduce or take narcotics of [sic] alcoholic beverages in the [Pepsiamericas] premises." Id. at 3-5.

Even assuming, *arguendo*, that reasonable minds could differ as to the seriousness of the abovementioned offenses and the severity of their respective sanctions, there still must be a clear expression as to the effect of the single offense on the normal operation of the business. See Secretario del Trabajo, 8 P.R. Offic. Trans. 564. The arbitrator in the case presently before the court cited Secretario del Trabajo, 8 P.R. Offic. Trans. 564, and relied on Autoridad de Edificios Públicos, 130 D.P.R. 983, and Miranda Ayala, 2007 TSPR 62, in the arbitration award. See Docket 13-4 at 6-7. Hence, it is evident that the arbitrator was familiar with the relevant legal standard under Puerto Rico law. It is clear that Puerto Rico law does not always consider every single, first time, dishonest act as just cause for dismissal. See Secretario del Trabajo, 8 P.R. Offic. Trans. 564; Autoridad de Edificios Públicos, 130 D.P.R. 983; Miranda Ayala, 2007 TSPR 62. In the case at bar, however, the arbitrator did not consider or make a clear expression as to the effect of Rodríguez's conduct on the normal operation of Pepsiamericas's business and Pepsiamericas offered no evidence as to any such effect. (See Docket

11

Movimiento Solidario Sindical v. Pepsiamericas, Inc.
Civil No. 08-1510 (FAB/MEL)
Report and Recommendation

13-4 at 4-9.)[4] Therefore, the arbitrator in the present case acted in manifest disregard of the law in issuing the arbitration award and said award should be vacated.

## IV. CONCLUSION

For the reasons explained above, it is recommended that the motion for summary judgment be DENIED, and the arbitration award be vacated.

IT IS SO RECOMMENDED.

In San Juan, Puerto Rico, this 6th day of March, 2009.

                                            s/Marcos E. López
                                            U.S. MAGISTRATE JUDGE

---

[4] Although the arbitrator did not make an specific finding as to the relation of Pepsiamericas's rule of conduct or Rodriguez's offense to the normal operation of Pepsiamericas's business, the arbitrator did state that generally "the employer is recognized the authority [sic] to adopt those rules of efficiency and/or rules of conduct it deems necessary to safeguard the good operation of its company, provided these satisfy the criteria of responsibility." (Docket 13-4 at 6.) One could argue that this constitutes an implicit finding that the rules adopted by Pepsiamericas are necessary to safeguard the operation of its business and that any violation of said rules would automatically have the effect on the normal operation of business required to justify dismissal for a first offense. As previously discussed, however, an explicit finding of the effect on the normal operation of an employer's business is necessary to justify dismissal of an employee for a single offense, at least in the leave from work context. See Secretario del Trabajo, 8 P.R. Offic. Trans. 564.